IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| KATHY YVETTE BROWN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 7:16-CV-404 |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Kathy Yvette Brown ("Brown") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled and therefore not eligible for supplemental security income ("SSI") and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f. Specifically, Brown alleges that the ALJ failed to properly assess her impairments on a function-by-function basis, and failed to provide sufficient reasons for the credibility analysis. I conclude that substantial evidence supports the ALJ's decision as a whole. Accordingly, I **RECOMMEND DENYING** Brown's Motion for Summary Judgment (Dkt. No. 13), and **GRANTING** the Commissioner's Motion for Summary Judgment, (Dkt. No. 15).

## STANDARD OF REVIEW

This Court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Brown failed to demonstrate that she was disabled under the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted

1

evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## **CLAIM HISTORY**

Brown filed for DIB and SSI on August 7, 2012, claiming that her disability began on June 1, 2012.[2] Administrative Record, hereinafter "R." 22. The Commissioner denied the applications at the initial and reconsideration levels of administrative review. R. 78–119. On June 20, 2014, ALJ Robert Habermann held a hearing to consider Brown's disability claim. R. 35–77. Brown was represented by an attorney at the hearing, which included testimony from Brown and vocational expert Gerald Wells. Id.

On October 8, 2014, the ALJ entered his decision analyzing Brown's claim under the familiar five-step process,[3] and denying Brown's claim for benefits. R. 22–30. The ALJ found that Brown suffered from the severe impairments of hypertension, hyperlipidemia, and history of

---

or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[2] Brown's date last insured is December 31, 2017. R. 22. Thus, she must show that his disability began before that date and existed for twelve continuous months to receive DIB. 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a).

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

chronic obstructive pulmonary disease ("COPD"). R. 25. The ALJ found that these impairments did not meet or medically equal a listed impairment. Id. The ALJ further found that Brown had the residual functional capacity ("RFC") to perform light work, except that she can lift and/or carry [twenty pounds][4] occasionally and frequently; can sit, stand and walk for six hours in an eight-hour workday; can occasionally climb, balance, stoop, kneel, crouch and crawl; and she is limited to unskilled work. Id. The ALJ determined that Brown is capable of performing her past relevant work as a housekeeper, and thus she is not disabled. R. 29–30.

Brown requested that the Appeals Council review the ALJ's decision and on July 27, 2016, the Appeals Council denied Brown's request for review. R. 1–5. This appeal followed.

## ANALYSIS

**Medical and Opinion Evidence**

Brown's treatment history is fairly conservative. Before the relevant period,[5] in July and November of 2011, Brown visited New Horizons Healthcare and was assessed with diabetes mellitus type 2 uncontrolled, hypertension, COPD, GERD, hyperlipidemia, depression, and anxiety. R. 319, 320, 322–23. She received similar assessments in March 2012 and July 2012. R. 311–12, 316. At the July 2012 appointment, no changes were made to Brown's medications and her physical examination was unremarkable except for a blood test suggesting elevated blood sugar (high "HbA1C"). R. 312.

Brown next received treatment in October 2012 when she went to Roanoke Memorial Hospital after suffering a fall. R. 352–70. Robert Salters, M.D., noted that Brown reported a

---

[4]The ALJ's opinion contains a typographical error with respect to the amount of weight Brown can lift and/or carry—the ALJ fails to include the amount. R. 25. It is clear though that the RFC finding relies on the first hypothetical asked of the vocational expert, which specifies that Brown can "occasionally lift and frequently carry 20 pounds." See R. 30, 71–72.
[5] The relevant period is the alleged date of onset, June 1, 2012, through the date of the ALJ's decision, October 8, 2014. R. 22.

3

history of loss of consciousness and falls since January 2012. R. 352. Brown denied concern with this issue, seeking instead treatment for her left wrist and elbow pain. Id. X-rays of Brown's left elbow and wrist were unremarkable, showing no fracture or acute process. R. 357. The examining physician found that Brown had tachycardia, and suffered a syncopal episode when she fell. She had tenderness, but normal range of motion, no edema, and a normal gait. R. 354. Brown was diagnosed with abrasions and prescribed Motrin. R. 357–58. A few days later, at a follow-up appointment at Horizon Behavioral Health, Brown was again positive for depression and anxiety and assessed with diabetes mellitus type 2 uncontrolled, hypertension, COPD, GERD, and hyperlipidemia. R. 340–41. Brown received the same assessment on January 17, 2013. R. 338. At this January visit, Brown did not have any new complaints about physical symptoms and a physical examination was unremarkable. R. 337–39.

On January 22, 2013, Brown reported to Roanoke Memorial Hospital complaining of moderate intermittent chest pain. R. 371. The pain was worse when lying down, but better when sitting. Id. Brown reported that the episodes of pain last only a few seconds and occur six-to-seven times per day. Id. As Brown's chest X-rays showed no acute abnormality, she was assessed with atypical chest pain and prescribed medication for heartburn. R. 374–77, 475. About four months later, in May 2013, Brown reported to New Horizons Healthcare for a follow-up appointment for her diabetes. R. 396. She complained of digestive issues and was assessed with COPD, hypertension, diabetes mellitus type 2 – uncontrolled, irritable bowel syndrome, and callus. R. 397. Brown received medication for her irritable bowel syndrome. Id.

A month later, on June 27, 2013, Brown went to the emergency department at Roanoke Memorial Hospital complaining of moderate left-sided chest pain and numbness in her left arm. R. 415. Examination revealed that Brown was not in distress and she was assessed with chest

pain and dehydration. R. 419. Brown received Motrin and intravenous fluids. Id. Two months later, Brown reported again to the emergency department, this time complaining of abdominal pain. R. 438. Brown was positive for nausea, abdominal tenderness and pain, and diarrhea. R.439. A CT scan of Brown's abdomen showed no issues and Brown was discharged with "no diagnosis found." R. 439–42, 452–53.

In September 2013, an X-ray of Brown's foot revealed small calcaneal spurs and an X-ray of her chest showed no radiographic evidence of acute cardiopulmonary process. R. 467–69. Brown then had a stress test in October 2013 and the results were normal. R. 464–67. In February 2014, a CT scan of Brown's abdomen showed "stable punctatle left renal angiomyolipoma" and no nephrolithiasis. R. 462–63. An MRI of Brown's pelvis in April 2014 revealed mild tendinosis in her gluteus muscles and a "possible small nondisplaced" tear in her right labrum. R. 461–62.

As to opinion evidence, in November 2012, state agency consultant Shirish Shahane, M.D., reviewed Brown's records and determined that Brown's physical impairments were not severe and were well-controlled by medication. R. 80–81. In August 2013, a second state agency expert consultant, R.S. Kadian, M.D., concluded that Brown could occasionally lift fifty pounds and frequently lift twenty-five pounds, and therefore was capable of medium level work. R. 101–03. At the ALJ's request, a third medical expert, William J. Cirksena, M.D., reviewed the evidence in August 2014. Dr. Cirksena found Brown could frequently lift up to twenty pounds, lift and carry ten pounds continuously, occasionally carry up to fifty pounds and could sit, stand, and walk for at least six hours. R. 481–83. After the ALJ's decision, in December 2014, Catherine Parker, FNP, completed a medical evaluation for the Department of Social Services

and determined in a conclusory fashion that Brown was unable to work for six months. R. 490–95.[6]

**Function-by Function Analysis**

Brown asserts that the ALJ failed to consider how her impairments affect her ability to work on a function-by-function basis, and specifically failed to consider Brown's inability to maintain a static work posture, perform tasks without taking excessive breaks, and her need to lie down for three to four hours during the day. Pl. Br. Summ. J. 9–10.

SSR 96-8p requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. 1996 WL 374184 (SSA) (July 2, 1996). Specifically, the ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8p, 1996 WL 374184, at *7. In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Mascio, 780 F.3d 632, 636 (4th Cir. 2015) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence

---

[6] Brown submitted these forms to the Appeals Council. R. 490–95. In her brief, Brown does not challenge the Appeals Council's finding or suggest that the ALJ's decision would have been different had he considered these forms.

regarding the claimant's weight lifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D. W. Va. Apr. 29, 2015).

Here, the ALJ's opinion meets the standards set by SSR 96-8p. The ALJ's findings include a detailed summary and analysis of Brown's impairments, medical records, testimony, and opinion evidence. This section of the opinion spans four single-spaced pages of the nine page opinion and discusses Brown's symptoms, her resulting limitations, her testimony, her credibility, medical evidence, and medical opinions. R. 26–29. It is unclear what Brown means when she refers to "static work posture" in her brief, and she points to no evidence that suggests she was unable to maintain such a posture. The ALJ considered Brown's testimony that she was frequently fatigued and needed to lie down during the day, but determined that Brown's daily activities were not as limited as she alleged. R. 28–29. The ALJ explained why he gave specific weight to the various medical opinions. R. 27–29. The ALJ also discussed Brown's ability to perform sustained work activities on a daily basis and described the amount of each activity she could perform based on the evidence in the case. R. 28–29. SSR 96–8p, 1996 WL 374184, at *7. I am not left to guess about how the ALJ arrived at his conclusions. Thus, the ALJ satisfied his responsibility under SSR 96-8p.

Further, the ALJ did not err when presenting a hypothetical scenario based on Brown's established limitations. See Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005) (holding that hypothetical questions are adequate if they reflect a RFC for which the ALJ had substantial evidence). It is not the Court's role to weigh the conflicting evidence or substitute its judgment for that of the ALJ. Substantial evidence supports the RFC finding.

**Credibility[7]**

Brown also asserts that the ALJ failed to give specific reasons for his finding that Brown's statements concerning the intensity, persistence and limiting effects of her symptoms are not entirely credible. Pl. Br. Summ. J. 11–12. After a review of Brown's treatment records and allegations of disability, the ALJ stated:

> The claimant's allegations are not entirely credible. The claimant reported she was unable to work due to headaches, high blood pressure, diabetes, depression, blackouts, hip problems, pain, and spasms, low back pain, drowsiness and nausea from medications, stomach and bowel problems, crying at times, and use of a cane. The claimant further reported high blood sugar and cholesterol, pain in the feet and toes, and chest pain. However, the medical evidence of record reveals the claimant's symptoms are controlled with conservative treatment and medications, and she has no medically determinable mental impairments despite allegations of depression. Moreover, such has been addressed in the reduced residual functional capacity issued giving the claimant the benefit of a doubt with her mental allegations. In fact, the medical evidence of record reflects multiple unremarkable physical and psychiatric examinations. Additionally, the claimant continues to perform numerous robust activities of daily living. Overall, the claimant's subjective symptoms did not correlate with the objective findings in the medical evidence of record.

---

[7] I note that in March 2016, the Social Security Administration superseded the language of SSR 96-7p when it ruled in SSR 16-3p that "credibility" is not appropriate terminology to be used in determining benefits. See Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3p (S.S.A. Mar. 16, 2016) (effective March 28, 2016). "[W]e are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. SSR 16-3p at *1. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character." Id. Thus, under SSR 16-3p, the ALJ is no longer tasked with making an overarching credibility determination and instead must assess whether the claimant's subjective symptom statements are consistent with the record as a whole.

Here, SSR 16-3p was issued after the ALJ's consideration of Brown's claim, and both the ALJ's opinion and the parties' briefs speak in terms of a "credibility" evaluation. Accordingly, I will analyze the ALJ's decision based on the provisions of SSR 96-7p, which required assessment of the claimant's "credibility." See Keefer v. Colvin, No. CV 1:15-4738-SVH, 2016 WL 5539516, at *11 (D.S.C. Sept. 30, 2016); Ford v. Colvin, No. 2:15-CV-05088, 2016 WL 5171986, at *5 (S.D. W. Va. Sept. 21, 2016); Hose v. Colvin, No. 1:15CV00662, 2016 WL 1627632, at *5 (M.D.N.C. Apr. 22, 2016); Lopez v. Colvin, No. 3:16CV24 (JAG), 2016 WL 6594107, at *4 (E.D. Va. Oct. 13, 2016) (noting "[t]he Agency does not have the power to engage in retroactive rulemaking"). However, I note that the methodology required by both SSR 16-3p and SSR 96-7p, are quite similar. Under either, the ALJ is required to consider Brown's report of her own symptoms against the backdrop of the entire case record. In SSR 16-3p, this resulted in a "credibility" analysis; in SSR 16-3p, this allows the adjudicator to evaluate "consistency."

R. 29.  The ALJ outlined his reasons for this determination, referencing Brown's typically normal exams and diagnoses with limited and conservative treatment. Id. The ALJ found that Brown's daily activities are not as limited as she alleged and inconsistent with disability, as she reported microwaving meals, doing housework, shopping with her mother, babysitting her grandchild, cleaning, exercising for thirty minutes, washing dishes, and doing laundry. R. 28–29. Brown also reported walking, driving, attending church, paying bills, and handling a savings account. R. 29. See Dolfax v. Astrue, No. 7:09–cv–67–FL, 2010 WL 1488116, at *11 (E.D.N.C. Mar. 18, 2010) (finding that activities of daily living are a highly probative factor in determining the credibility of a claimant's allegations) (citing Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986)).

It is for the ALJ to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Brown's subjective allegations of her disabling pain, symptoms, and impairments are not conclusive on their own; rather, subjective complaints and statements of symptoms, like all other evidence of disability, are considered in the context of the record as a whole. 20 C.F.R. §§ 404.1529, 416.929 (2014). If a claimant's statements are inconsistent with other evidence, the ALJ may find them less than fully credible and weight them accordingly. See SSR 96–4p, (July 2, 1996); SSR 96–7p, (July 2, 1996).

In this case, the ALJ found that Brown's statements regarding the severity of her limitations and pain were not wholly credible because they were not supported by the objective medical evidence, her treatment history, and her daily activities. R. 28–29. The ALJ's opinion includes a detailed consideration of Brown's medical history along with Brown's allegations. A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should

not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). Substantial evidence supports the ALJ's determination that Brown's testimony is only partially credible, and that Brown is capable of performing work at the level stated in the ALJ's opinion.

## RECOMMENDED DISPOSITION

For the foregoing reasons, I recommend affirming the Commissioner's decision, **GRANTING** the defendant's motion for summary judgment, and **DENYING** Brown's motion for summary judgment.

The Clerk is directed to transmit the record in this case to Elizabeth K. Dillon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation which must be filed within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection, including a waiver of the right to appeal.

Entered:  January 23, 2018

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge