IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| KATHY YVETTE BROWN, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:16-cv-00404 |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | By:  Elizabeth K. Dillon |
|     Commissioner of Social Security, | ) |        United States District Judge |
| | ) | |
|     Defendant. | ) | |

**MEMORANDUM OPINION**

Plaintiff Kathy Yvette Brown brought this action for review of defendant Nancy A. Berryhill's (the commissioner's) final decision denying her claim for supplemental security income (SSI) and disability insurance benefits (DIB) under the Social Security Act (the Act). *See* 42 U.S.C. § 405(g) (2012) (authorizing a district court to enter judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security"). The parties filed cross-motions for summary judgment, which the court referred to United States Magistrate Judge Robert S. Ballou for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). In his report, the magistrate judge concluded that substantial evidence supported the commissioner's decision. (Dkt. No. 21.)

Brown timely filed written objections (Dkt. No. 22), and the commissioner filed a response (Dkt. No. 23). After de novo review of the pertinent portions of the record, the report, and the filings by the parties, in conjunction with applicable law, the court agrees with the magistrate judge's recommendation. Accordingly, the court will grant defendant's motion for summary judgment, deny plaintiff's motion for summary judgment, and affirm the commissioner's decision.

I. BACKGROUND

The court adopts the recitation of facts and procedural background as set forth in the report. (Report 2–3, Dkt. No. 21.)

II. DISCUSSION

A. Standard of Review

This court's review of the administrative law judge's (ALJ) underlying decision is limited. Specifically, "[a] district court's primary function in reviewing an administrative finding of no disability is to determine whether the ALJ's decision was supported by substantial evidence." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence does not require a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 564–65 (1988); rather, it requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This is "more than a mere scintilla of evidence [and] somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

Where, as here, a matter has been referred to a magistrate judge pursuant to 28 U.S.C. § 636(b)(1), this court reviews de novo the portions of the report to which a timely objection has been made. Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."); *United States v. Raddatz*, 447 U.S. 667, 673–74 (1980) (finding that de novo review of the magistrate's report and recommendation comports with due process requirements).

In order for an objection to trigger de novo review, it must be made "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007). *See also Page v. Lee*, 337 F.3d

411, 416 n.3 (4th Cir. 2003). Further, objections must respond to a specific error in the report and recommendation. *See Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). General or conclusory objections, therefore, are not proper; they are in fact considered the equivalent of a waiver. *Id*. Likewise, an objection that merely repeats the arguments made in the briefs before the magistrate judge is a general objection and is treated as a failure to object. *Moon v. BWX Techs*, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), *aff'd*, 498 F. App'x 268 (4th Cir. 2012) (citing *Veney v. Astrue*, 539 F. Supp. 2d 841, 844–46 (W.D. Va. 2008)). As other courts have recognized in the social security context, "[t]he Court may reject perfunctory or rehashed objections to R & R's that amount to a second opportunity to present the arguments already considered by the Magistrate Judge." *Heffner v. Berryhill*, No. 2:16-cv-820, 2017 WL 3887155, at *3 (D.S.C. Sept. 6, 2017) (quoting *Felton v. Colvin*, No. 2:12-cv-558, 2014 WL 315773, at *7 (E.D. Va. Jan. 28, 2014)).

**B. Brown's Objections**

Brown raises two objections to the report. In general terms, Brown's first objection is that the ALJ did not satisfy the standards set forth by Social Security Ruling (SSR) 96-8p and, in particular, did not conduct the proper function-by-function analysis required by that ruling when determining her residual functional capacity (RFC). (Objs. 1–5, Dkt. No. 22.) As part of this objection, she specifically takes issue with the magistrate judge's statement that she did not point to any evidence that she was unable to maintain a "static work posture." (Report 7, Dkt. No. 21.) She contends that the foregoing statement in the report was erroneous because she testified before the ALJ that she has difficulty walking, sitting, and standing; she can only do chores for

3

approximately 10 minutes before needing to rest; she cannot sit, stand, or walk very long; and she rests three to four hours out of an eight hour day. (Objs. 1–2 (citing R. 46–47, 53–54, 67).)[1]

Similarly, she claims that the ALJ's reliance on her reports of daily activities to conclude that she was not limited as she testified, do not provide substantial evidence for his decision because the limitations she described are not contradicted by her daily activities. She also claims that the RFC was not correct because the ALJ's explanations about the weight he gave to various medical opinions were incomplete and did not adequately explain his finding that she is capable of performing work at the light exertional level. (Objs. 3–4.)

Based on all of these contentions, she theorizes that the ALJ's RFC findings are not supported by the record. As a result, she claims that the ALJ also erred when presenting hypothetical scenarios to the vocational expert based on that RFC. She argues that the report errs in finding to the contrary and that the report's conclusions are unsupported.

In her second objection, Brown contends that the ALJ's credibility determination is not supported by substantial evidence and that the report erred in concluding it was. (Objs. 5–7.)

Both of these objections are largely the type of "rehashed objections" that the *Heffner* and *Felton* courts concluded could be rejected on that basis. *See Heffner,* No. 2:16-cv-820, 2017 WL 3887155, at *3 (citing *Felton*, No. 2:12-cv-558, 2017 WL 315773, at *7). That is, she made the same arguments in her summary judgment briefing before the magistrate judge. (*Compare* Objs. 1–5, *with* Pl.'s Mem. Supp. Mot. Summ. J. 7–10, Dkt. No. 14 (including same basic arguments in both); *compare also* Objs. 5–7 *with* Pl.'s Mem. Supp. Mot. Summ. J. 10–12 (same).)

---

[1] The report correctly notes that Brown does not define "static work posture." (*See* Report 7.) Nonetheless, to the extent that her testimony at the hearing is some evidence that she cannot sit or stand for the length of time set forth in the RFC, the court agrees with her that the report erred in saying there was "no evidence" she was unable to maintain the postural limitations set forth in the RFC. But in any event, the report went on to note that the ALJ considered her testimony and explained why he did not adopt the severe limitations about which she testified. (*Id.*) As discussed by the report and further herein, that determination was supported by substantial evidence.

Furthermore, nearly all of the arguments Brown raises were adequately addressed by the report, and the court finds the reasoning of the report to be correct, particularly with the additions discussed in this opinion. Even reviewing the objections de novo, then, the court overrules the rehashed objections for the reasons set forth in the report.

There are two aspects of Brown's objections, however, that were not addressed by the magistrate judge's report, and they require further explanation. The court addresses them below.

First, both of her objections rely to some extent on the Fourth Circuit's decision in *Brown v. Comm'r*, 873 F.3d 251 (4th Cir. 2017), which was decided after briefing on the summary judgment motions was complete. A discussion of whether *Brown* affects this case is therefore warranted.

Second—and although her objections do not clearly make the argument—Brown points out that Catherine Parker, a Family Nurse Practitioner at Horizon Health, completed three forms that stated that Brown was unable to participate in any employment or training activities in any capacity for three six-month periods spanning the time period of October 2013 through May 2015. Brown seems to be saying that this evidence of record confirms that she "has difficulty performing any activity on a sustained basis." (Objs. 2.) The court addresses each of these in turn.

### 1. Brown's Reliance on *Brown v. Comm'r*, 873 F.3d 1251 (4th Cir. 2017)

As already noted, both of Brown's objections cite liberally to the Fourth Circuit's decision in *Brown v. Comm'r*, 873 F.3d 251 (4th Cir. 2017). Because *Brown* was decided after the briefing in this case, neither party cited the case in its summary judgment brief. As a result, the magistrate judge understandably did not discuss *Brown* in his report.

In *Brown*, the court concluded that the ALJ had committed a number of errors. As to the claimant's credibility finding, the court went through each of the bases the ALJ had given for his credibility finding and found error with all of them. 873 F. 3d at 263–66. One of those bases was the claimant's self-described activities of daily living. On this issue, the Fourth Circuit explained:

> With respect to the first reason for the adverse credibility finding, the ALJ noted that Brown testified to daily activities of living that included "cooking, driving, doing laundry, collecting coins, attending church and shopping." *See* Second ALJ Decision 11. The ALJ did not acknowledge the extent of those activities as described by Brown, e.g., that he simply prepared meals in his microwave, could drive only short distances without significant discomfort, only occasionally did laundry and looked at coins, and, by the time of the second ALJ hearing, had discontinued regular attendance at church and limited his shopping to just thirty minutes once a week. Moreover, the ALJ provided no explanation as to how those particular activities—or any of the activities depicted by Brown—showed that he could persist through an eight-hour workday.

*Id.* at 263; *see also id.* at 269–70 (making same basic point). Later, the court noted that the ALJ had "wholly failed to 'build an accurate and logical bridge from the evidence to his conclusion' that the claimant's testimony was not credible." *Id.* at 269 (quoting *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016)). For example, although the ALJ had determined that the claimant's statements about his pain conflicted with other evidence, the court ruled that the ALJ had mischaracterized that other evidence and the medical record. *Id.* at 270.[2]

Despite Brown's heavy reliance on *Brown*, there are only passing similarities between that case and this one. In determining Brown's RFC, and in assessing the credibility of her testimony about her limitations, the ALJ relied on some activities, such as "doing housework[,] shopping with her mother, and babysitting her 2-year old grandchild," that Brown described

---

[2] The *Brown* court was highly critical of the ALJ's opinion in that case, describing various "instances of inaccuracy and unreasonableness," saying he "flout[ed] the treating physician rule" and was "[f]aithless to the regulation" for evaluating medical opinion evidence. 873 F.3d at 268, 270.

6

doing in ways that are much more limited than would show she "could persist through an eight-hour workday," *Brown*, 873 F.3d at 263. (*See* R. 28 (describing these activities as "inconsistent with her complaints of prolonged and consistent disabling functional limitations").) For example, Brown testified that she could only do about ten minutes of housework before having to rest (R. 67), that she shops for food "once a month, most places" (R. 43), and that she babysits but doesn't pick up her two-year old granddaughter and makes the granddaughter rest when she does (R. 60–61). Thus, like the ALJ in *Brown*, the ALJ here failed to discuss "the extent of those activities as described by Brown" and arguably overstated the extent of her daily activities as described by her at the hearing. But the ALJ here correctly noted a number of other daily activities that she had reported being able to perform. (R. 29 (citing Exhibits 4E and 11E, forms that Brown completed including more activities of daily living).)

Significantly, moreover, the ALJ here did rely on far more than those daily activities to discount in part Brown's testimony at the hearing, both when he determined the RFC and when he found Brown not entirely credible. Specifically, the ALJ pointed not only to her daily activities as inconsistent with her subjective complaints, but also to "the record and objective medical evidence [that] reflects the claimant's limitations mildly restrict her daily activities." (R. 28.) And unlike the ALJ in *Brown*, the ALJ here did not mischaracterize the other medical evidence, nor rely on evidence contradicted by the record, nor rely on a medical opinion that conflicted even with the ALJ's own determinations, nor reject the "consistent opinions of [five] treating and examining sources," *Brown*, 873 F.3d at 266. In short, while in *Brown* there were numerous errors compounding the failure to describe accurately the extent of the plaintiff's daily living activities, the same problems do not exist in this case so as to undermine the substantial evidence supporting the ALJ's decision.

Here, as noted by the magistrate judge in his report, the ALJ relied on the medical evidence of record, explained how that evidence supported his determination of the RFC, and explained how it did not support the severe limitations about which Brown testified. (Report 7, 8–9.) The ALJ also noted that the medical evidence revealed her symptoms were largely controlled with conservative treatment and medications. The ALJ relied, therefore, on competent record evidence to find that Brown's subjective complaints at the hearing should not be included as limitations in her RFC and that they were not entirely credible. For these reasons, the court overrules both of Brown's objections to the extent they rely on *Brown* to argue that the ALJ's decision was not supported by substantial evidence.

### 2. Forms Completed by Catherine Parker, FNP

The second aspect of the objections that the court addresses is the impact of the three forms completed by Catherine Parker, FNP. Those forms were not submitted until after the ALJ rendered his decision, and they were received by the Appeals Council. (R. 6.) In its decision, the Appeals Council determined that the "additional evidence does not provide a basis for changing the Administrative Law Judge's decision," but did not otherwise explain its decision on this issue. (R. 2.) As noted, the magistrate judge acknowledged that Brown pointed out the forms, but concluded that she did "not challenge the Appeals Council's finding" and did not argue "that the ALJ's decision would have been different had he considered these forms." (Report 6 n.6.) Although Brown does not make a clear argument that these forms would have resulted in a different decision by the ALJ, she does point to them as record evidence undermining the ALJ's determination of her RFC. (Objs. 2.) Thus, the court will construe her objection as a contention that the forms should have resulted in a different decision, and the court will address that contention.

The three forms were completed in October 2013, May 2014, and December 2014, and each stated that plaintiff could not work for at least six months each time. (R. 490–495.) The forms are a checklist-type form that Parker completed for the Department of Social Services, where she simply checked a box stating that Brown cannot participate in employment and training activities in any capacity for a period of at least six months from the date of the form. In terms of an explanation for that statement, Parker simply said that the limitation was due to "chest pain and anxiety" in the first form and due to "back and hip pain" in the second and third forms. (*Id.*) They contain no other explanation for the limitations stated.

When deciding whether to grant review, the Appeals Council must consider additional evidence, "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." *Wilkins v. Sec'y, Dep't of Health and Human Servs.,* 953 F.2d 93, 95–96 (4th Cir. 1991). Evidence is new if it is not duplicative or cumulative and is material if there is a reasonable possibility that the new evidence would have changed the outcome. *Id.* Upon the Appeals Council's denial of Brown's request for review, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981. Thus, the court reviews the whole record, including any new evidence, to determine whether the ALJ's decision is supported by substantial evidence. *Wilkins*, 953 F.2d at 96.

Another judge of this court has previously explained how to conduct this review. Specifically,

> [W]hen faced with new evidence, a court must reconcile its duty under *Wilkins* to review the entire record including the new evidence to determine if there is a reasonable possibility that it would change the outcome, with its obligation under *Smith* to abstain from making credibility determinations and resolving factual conflicts. [*Davis v. Barnhart*, 392 F. Supp. 2d 747, 751

9

> (W.D. Va. 2005) (citing *Smith v. Chater*, 99 F.3d 635, 638 (4th
> Cir. 1996).]

*Neice v. Colvin*, No. 7:14-cv-24, 2015 WL 1169216, at *5–6 (W.D. Va. Mar. 13, 2015).

Applying those principles here, the court concludes that there is not a reasonable possibility that Parker's three forms would have changed the ALJ's decision and that it need not make any credibility determination or resolve a factual conflict to so conclude. Primarily, this is because the forms do not offer a medical "opinion." Although Parker was a treating source and medical *opinions* from such sources are generally afforded more weight, *Hines v. Barnhart,* 453 F.3d 559, 563 (4th Cir. 2006), none of the forms completed gave any narrative explanation as to why the limitations were being imposed. In essence, they were merely forms claiming that Brown could not perform any work or training, which is a determination of disability. That determination is to be made only by the commissioner, and opinions on issues "reserved to the Commissioner," such as whether a person is disabled, are not considered "medical opinions" entitled to any special weight under the regulations. 20 C.F.R. § 404.1527(d)(1); SSR 96–5p, 1996 WL 374183; *Huff v. Astrue,* No. 6:09-cv-42, 2010 WL 5296842, at *5 (W.D. Va. Nov. 22, 2010).

Even though Parker's forms were not opinions, the commissioner must nonetheless evaluate those forms in light of the whole record to determine the extent to which her statements that Brown can perform no work are supported by the record, considering the same factors used to evaluate "medical opinions." SSR 96–5p, 1996 WL 374183, at *3; *see also* 20 C.F.R. § 404.1527(c). In this case, the statements are not supported by the other medical records, and instead there is "persuasive contrary evidence" in the record—as indicated by the evidence cited by the ALJ supporting the RFC. Thus, the court cannot find any reasonable possibility that Parker's forms would have changed the ALJ's decision. *See Hines,* 453 F.3d at 563 n.2

(concluding an ALJ can reject an opinion in whole or in part where there is persuasive contrary evidence in the record); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) (same). Accordingly, to the extent Brown has made an argument that the forms would have resulted in a different decision, the court overrules that objection.

## III. CONCLUSION

After a de novo review of the record, the court finds that the ALJ's decision is supported by substantial evidence and that the ALJ applied the correct legal standards. Accordingly, this court will overrule Brown's objections and adopt the magistrate judge's recommendation. The court will therefore grant the commissioner's motion for summary judgment and deny Brown's motion for summary judgment.

An appropriate order will be entered.

Entered: March 22, 2018.

/s/ *Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge